May I begin? Sure. Good morning, Your Honors. My name is Gerald Spivak. First of all, can you hear me? I'm a little bit nervous and I want to make sure that I'm loud enough. I would like to ask, first of all, three minutes for rebuttal time. Okay. Having sat through the prior argument, you know it's possible. Pardon me, Your Honor? Having sat through the prior argument, you know it's possible. Yes, Your Honor. Okay. No problem. And I read the instructions beforehand, so I'm going to ask. Okay. And I was told by the clerk. We represent Mr. and Mrs. Greenspan, who entered into a contract in 1990 with Rollins Protective Services, the predecessor for ADT. The contract provided that ADT would provide certain fire monitoring equipment and thereafter monitor their premises for smoke. And they didn't. They removed a defective detector and never put it back. In 2001, about 11 years later, they removed the smoke detector from the second floor. In 2004, a fire took place. And there was no smoke detector on the second floor. There is a provision of the contract that's in bold. That's very interesting, Your Honor. It is in bold. It's in bold type. And it limits liability for improper design, installation, maintenance, or repair of the system or monitoring service, et cetera, et cetera. Limits it to $500 with the option for increased liability, which they did not choose. So I'm having difficulty determining how you can nullify that provision or say that there was no intent to do and to abide by what that provides. All right. The provision setting $500 limitation did provide for an increase in liability, provided it was negotiated. However Now what you say, provided it was negotiated. Yes. There's no room for negotiation. Well, the contract itself provides. And if you look at page six, you can read it more Let me read you what that provision says. In the event the parties desire to impose greater liability upon the obligation here under, customer may request an increased limited liability by offering to pay an additional amount of 10% of the increased limit, minimum of $100 increments. And if accepted by ADT, an additional rider signed by the president of ADT shall be attached to this agreement. If you do the math, our claim was for $400,000. If you do the math, the amount That they would have had you pay for this increase was a huge amount of money. $474,000 a year. Well, but what they want you not to do, they want you to get insurance, don't they? Well, they're not saying that. They're not, they're saying this is a, this is a contract between consumers. It's not a contract between knowledgeable business persons. What they're saying is it's not really a limitation of liability. They're saying this is an exculpatory provision because they're, all we have to pay is approximately one year's rental or one year's monitoring fee, which is about $419 or $420. So you're saying in order to take advantage of that clause to buy increased coverage, in this case, given the placement value of the house would have cost them $40,000? No, it would have cost them $474,000. But isn't that really the point that ADT or Rollins or whatever is saying, we are not an insurer. We are, you know, you're paying us X dollars to do what we do. The risk we would assume from the improper design if we're, if we've got to pay you without limitation is so huge that we have to let you know we're limiting our liability. We're not an insurer. Your Honor, if you look back at the agreement which appears on page 83 of the joint appendix. Well, let me get back to my main question. What is it that you say deprives from the apparent intent? I mean, most of the cases that talk about these types of provisions look at the language and say, was it really in the party's understanding that this is what is going to happen? And a lot of times they're construing negligence or use of the language that you think gives you the argument that we should not state that this was the party's intent to limit liability to $500. If you look at the agreement, 1 and numeral 8, there are two big paragraphs. Between the two paragraphs, a much smaller type, and it's much more difficult to read, and in order for me to read it, and I apologize, I had to use a magnifying glass. But let me read you what that type says, which is virtually impossible to read. It says, under no circumstances Is this in your brief? I'm reading from the joint appendix. I mean, whatever argument you're making, was it made in your brief? It was made in the brief in the sense that I said it was unreasonable, and I'm pointing out why it's unreasonable. Under no circumstances shall RPS, and that's the predecessor of every other person, for accidental or consequential damages of any nature in excess of such amount, including without limitation, damages to property, loss of property or revenue, or cost of replacement goods, however, occasion, and whether alleged to result from RPS's breach of warranty, negligence through strict liability, or otherwise. I'm saying that paragraph is so small that it's not legible, and was not really brought to the party's intention. But that's not the key paragraph. The key paragraph is the one before it in the bold that provides for total limitation of liability. That provides, in the contract, in the contract matter. Because this was, you're not contending this was not improper design, installation, maintenance or repair. I'm contending it was improper monitoring. When they took out the monitoring device for three or four years, and according to ADT, they said they told the Greenspans they were trying to get it replaced or couldn't get it replaced. The Greenspans have no knowledge of that. They were under a duty, a social duty, to follow through with their obligation to actually put in a monitoring report. They weren't under a contractual obligation to follow through? They were under both. They were under a contractual obligation. Yeah, using social duty, you feel me? At this point, they were under a social, they're contending that they could not repair it. But once they led the Greenspans to believe they were doing more, they never sent the Greenspans a letter and said, hey, we can't fix your monitoring equipment. You have to get new equipment. They didn't do that. What they continued to do each and every month was to accept the amount of the monitoring fee without sending them a letter saying we can't render the service that's promised. But the monitoring fee included more than the fire alarm. There was a burglar alarm against them? Yes, but the monitoring fee didn't change when they took out the smoke monitoring detector. So they were paying, whatever it was, approximately $500 a year for alarm monitoring. And it never changed. So there was confusion and fire. Fire is gone as to the second floor and the amount of the fee continued? Correct. Help me with the math. You said it was $474,000 premium. What was the emplacement value of the house? The insurance company paid $200,000 to repair the house, and we have an additional claim for approximately $200,000. How did they calculate the $474,000 they would have to pay to ADT? $40,000. How did I calculate it? To increase liability provision, you must request that you pay an additional 10% of the increased limit. The limit is $500. The increased limit would be $40,000. Times 12. A month? Yes, this is a monthly contract. They're paying these fees in a month. If you look at the contract. Well, it could be that the 10% is 10% a month. Yes, this is 10% a month. Show me where that, I mean, it's bad enough for 10%. What is it in the contract you're getting 10% a month? If you look at J83, the contract is Well, it says $100 increments, but there weren't $100 a month. No, that's the amount. It's 10% based on $100 increments. It's got to be a year, which is bad enough. This provision is printed on page 6 in larger type. It says, in the event the parties desire to impose greater liability upon the obligation here under, customer may request an increased limited liability by offering to pay an additional amount of 10% of the increased limit, minimum of $100 increments. That's not clear. So it is, and I apologize for not printing a larger copy in the appendix. But it's clear we're not dealing with knowledgeable business persons. We're dealing with consumers. People that had no experience in this area. And if ADT really wanted to make its intentions clear, the paragraph that is much smaller could have been at least the same size as all the other paragraphs. They did initial into that limitation liability clause. Yes, they did. They did initial it. Yes, they did. They were given these papers and that's frequently what consumers sometimes do that are not knowledgeable. I think all of the cases or most of the cases speak about the rights of knowledgeable business people to limit their liability if the provisions are reasonable. You're not claiming this is governed by the UCC? No, this is not governed by the UCC. The UCC would govern contracts between merchants for the most part. It covers sales of goods. Yes. You're not saying this is a sale of goods? Originally it was a sale of goods plus it's a service contract. The legislature has made a policy judgment for unconscionability analysis. If it's injury to person, limitation of liability is presumptively unconscionable. That's correct. But that's a policy judgment. That's right. Or property. Are you asking us to make that judgment now? I'm sorry, Your Honor. Are you asking us to make that judgment now? I'm saying that the same analysis would apply. What did the district court do with the tort claims? The district court considered the tort claims and applied the $500 limitation to the tort claims. To that. Okay. All right. Although it said that the gist of the action doctrine doesn't bar. But if we were to affirm on the other ground, we wouldn't reach that. But if we were not affirm on the other ground, we would need to reach the gist of the action doctrine. That's correct. Okay. Do you save some time? I'm sorry, Your Honor. You save some time, Mr. Spivak. Thank you. You may please report. What counsel represented to this court, I think, is consistent with the gist of the action case law and drives the outcome on the cross appeal, which really reduces and simplifies the analysis that needs to be undertaken on the limitation of liability. And that concession was consistent with what is conceded in the pleadings and all the briefing, that the duties in this case emanate from the written agreement. It is the same duty relating to, as counsel said now, monitoring, repair, maintenance, that created obligations giving rise to the breach of contract claim. But the thing is, that limitation of liability clause is troubling. You're limiting your liability basically to the amount that you collect each year to monitor the service. It did not reduce, according to Mr. Spivak's representation, when the second floor alarm was deactivated in terms of fire anyhow. The amount of the monthly monitoring remained the same. And then there's a clause here which, frankly, initially I looked at that and I thought, well, there's no way in the world that the clean spans can prevail because if they wanted more insurance, if they wanted more coverage than that ceiling of $500 allowed, they could buy it. But when I started to do the math, and it was late that I realized this, the number becomes totally unconscionable. In order to get an amount of your policy in terms of the ceiling that would have made them whole, assuming a $400,000 property, you're asking them to pay $40,000 to insure your loss. How in the world can we enforce a provision that says if you suffer damage because of a failure of our equipment, we're only going to give you back the amount of the money you paid for that which you weren't receiving anyhow, that is the monitoring fee for the alarm that you weren't getting from us. We're going to give you back the amount you paid us for services you weren't getting. If you want more than that, you have to pay us $40,000 a year. If an insurance company came in here and said that they were charging for property insurance, replacement value of a house from any loss, lightning, fire, flood, anything, a $400,000 house, $400,000 home, charging a premium of $40,000, the insurance commissioner would disallow the premium, I'm sure. How in the world can that clause be anything but unconscionable and not enforceable? Several reasons, Your Honor. One is that the policy and the law that backs up and enforces these types of provisions in alarm service contracts nationwide, including in the state appellate courts in Pennsylvania, doesn't look to whether or not the alarm company is an insurer. The policy is the alarm company is not an insurer and we price services based on the service and the goods that are provided and paid for in the contract. If you're pricing a service, where does that $500 come from? Where is the origin of the limit you put, the $100,000, I'm sorry, the 10% limit, where does that number derive from if it's not just pulled out of thin air? And where is the limitation of $500 coming from? What's driving those numbers? There's no record in this case as to how those numbers were chosen. Should they be entitled to make a record to try to find out whether or not those numbers substantiate what you just said, that you're pricing this according to the service that you're providing? You may be doing that, or you may be pricing this in such a way as to eliminate any possibility of liability. Not when the LoBianco court has already addressed this issue and balanced all of those policy decisions under existing Pennsylvania law and accounted for the other decisions, both in other federal circuit courts and in other state courts. But LoBianco didn't have a clause like this that allowed the consumer to increase the ceiling at a rate that is 10% of the amount of the increase. That was not in LoBianco. Typically, that is a provision that is provided. And I would say, if anything, that fact in our case counsels in favor of upholding this under LoBianco. It makes a stronger case of consumer choice from the standpoint that he is manifesting his intent and understanding specifically to this provision by saying, whether or not I think this is economically a good way to try and insure my property, I can buy property insurance. What it's saying is, I understand, alarm company, that you are providing a good and service. That you cannot price the services that you provide to me based on what it would cost to insure. That would drive you out of business. Instead, I'm making a choice that, unlike LoBianco, is affirmed not just by manifesting a signature on the same page, but on the very face of the contract, it's saying I'm initialing, saying that I have read this, manifesting my intent and declining the option of paying an additional $10 for every $100 increment that I increase this limitation of liability. So the policy judgments and issues that drive whether or not this clause is enforceable don't relate to the amounts that were chosen, both in terms of the limitation amount or in terms of the choice that was given. The contractual analysis is clear from LoBianco and all the cases that it cites, that you had a choice and you understood that you had a right to go buy insurance or raise the expense. LoBianco involved a burglary and a loss of jewelry. True. It just seems different in a situation where an alarm for a number of years is not working and the alarm company continues to charge the homeowner the same amount to monitor a system. And again, part of that system they're not receiving. They're not receiving the monitoring of the second floor fire alarm. The premium didn't go down or the monthly charge of monitoring didn't go down. It just seems like a very different situation policy-wise than LoBianco where a burglar breaks in and takes $35,000 worth of jewelry. But I think you also have to look to what the holding of LoBianco was. Taken in context of the policy issues that I've already discussed that are factored into state substantive law, the holding in LoBianco, and it's the same issue that you identified, is that insofar as there's the ability to get insurance, anytime a customer can obtain insurance against property damage, we uphold as reasonable this type of limitation of liability. It did go on to say, we voice no opinion on the issue of whether or not the analysis would be different if personal injury is involved. If somebody had been killed or hurt in this fire, then would the result be different? The analysis certainly would. There is not, I can tell the court, there is not a case on point in the state of Pennsylvania that addresses whether or not UCC or service contracts in this type of provision would be enforceable against a death or personal injury claim. Certainly under UCC law, the suggestion is there's a statutory mandate that they would not be. I can say that the Sixth Circuit, while it didn't address the limitation of liability provision in that context, did affirm a district court decision out of the Eastern District of Michigan that said, we analyzed this under Michigan state substantive law, which also has a UCC-based code for sales of goods, and we don't find the provision or the outcome to be unconscionable, or we don't find a different result depending on what the interest is, property or personal injury. That said, the short answer is we don't have to address that here because Lobianco has been good law in this state for 30 years and makes clear that insofar as the claim is property damage, where you can buy insurance, where you manifest your intent within the contract to use insurance as your exclusive source of recovery, we have looked at all of these policy decisions as a matter of state law, and we have balanced it in favor of turning to insurance. Has the Pennsylvania Supreme Court ever addressed the issue of Lobianco with Superior Court? It was correct, Your Honor. I'm sorry, I quaked in my boots asking this, but does it make sense to certify the question of the Pennsylvania Supreme Court? Which question in particular? The Lobianco question in this context, where there's basically been a failure of the consideration insofar as the monitoring of that second floor fire alarm constituted part of the consideration. There's been a failure of consideration in that sense. No, it does not, because the Lobianco case is good law, and as this Court has cited many times in the decision cited in the brief, including the Bowler decision, this Court will look to intermediate courts of appeals. Yeah, but in Lobianco, they got what they were paying for. They were paying for a burglar alarm and monitoring a burglar alarm. The burglar alarm malfunctioned, which could happen for any number of reasons, not necessarily something that's inherently the problem with the alarm or the monitoring system. There's a burglary. Here, for I don't know how long, this representative has been for years, the company was charging the Greenspans to monitor a fire alarm that they couldn't monitor because there was no fire detector there, at least on the second floor. But yet, they were still continuing to collect that money, and maybe that makes a distinction with Lobianco, and maybe not. Maybe the Pennsylvania Supreme Court would take a look at it and say, this is not Lobianco. It doesn't need to be certified for the reason that we've been discussing, which is this ties into the gist of the action. This is still a breach of contract. Both parties are still performing. This goes to the issue of whether or not ADT or predecessor is properly maintaining the alarm system under the contract. This is a maintenance issue. In the Valhall case, we said that the issue is whether the limitation of liability cap is so minimal compared to the expected compensation as to negate or drastically minimize the architect's concern for the consequences of a breach of his contractual obligation. Correct. It isn't in this case. In that case, there was a $50,000 limitation of liability. The compensation to the architect was $7,000. So it was an easy call to say that seven times that amount would not be unreasonable. Isn't, in this case, essentially the contract illusory because you're just returning their money to him? It's not, Your Honor, for the reasons that the state courts have already decided as it relates both to Lobianco and the Wierdner case, both of which involved, in many cases, less than a smaller limitation of liability than the one at issue here, the one in Wierdner, which this court cited with approval in Valhall and in other cases as being a reasonable example of a limitation of liability involved a smaller amount. So again, that is state substantive law that has dealt with, to the extent there needs to be this proportionality analysis, which there doesn't need to be when you already have decisions that are on point from the state substantive court. It does not run afoul of that statement, which one could argue was dicta in the Valhall case because there has not been a case that we have found in Pennsylvania where a limitation of liability is converted to an exculpatory clause as is suggested or implied in the Greenspan's brief. In Valhall, we didn't go there either. We analyzed it as a limitation of liability but recognized it as reasonableness. Because of the $50,000 rate. Correct. Is there any case, well, I asked your colleague, but I don't know of a case that says it's only reasonable if it relates to the possible exposure. No. Which would be here in this situation. I mean, I think that's where this case and the alarm service context is different. I mean, the risk reward here. Things can happen. To my mind, it would, in a way, might even justify the 10%. Because you're not an insurer and for you to be an insurer of this kind of potential exposure in this type, burglary, fire, it could be pretty costly. Correct. Correct. And those are the policy decisions that have been weighed with all of the other factors that this court has addressed and considered as part of the state substantive law as well as the Kruger decision to the extent there's any analysis of the number ratio of potential exposure or cost of the contract, which we submit isn't part of the state substantive law and isn't part of the persuasive authority in other jurisdictions. The Kruger case, this court affirmed the limitation of liability. It was in a commercial contract, but it was a multi-million dollar loss and the limitation of liability amount I think was $1,000 in that particular case. So there is ample substantive law both out of this circuit as well as from the state courts to which the substantive law that is applicable here applies. Go ahead. The thing I keep coming back to that troubles me is that this case is like any other I know of where you're continuing to bill them for something they're not receiving and that is monitoring in a system part of which includes fire protection for the second floor. Mr. Spivak represented the premium never went down when they lost part of the protection they initially contracted for. If the contract means anything it would seem to me that if they're not getting a consideration then the amount a full consideration the amount they're paying should have been reduced it wasn't reduced which would suggest at least that this thing really is just illusory certainly take it or leave it and in terms of the overall equities maybe we can't look at the equities in the context of the way this cause of action is brought that that clause just ought not to be enforced. Let me address that point in several respects. One is the consideration as has been noted was more than just if you look at the monitoring and the maintenance and repair the consideration is more than just monitoring one smoke. I understand that I understand that I tried to make it clear that's only part of it but it is a part of it so whatever part of $500 say it's X if X is some unknowable right now part of $500 once X is out of the picture it would seem that the fee that they should be charged is $500 minus X they were never charged $500 minus X they were charged $500 despite the missing component X of that $500 service that they were being billed for. And at that point if you take that argument to its conclusion ADT would in theory be in breach of contract and the typical contractual remedies would apply in an ordinary cause of action.  at that point you can fire ADT and hire another company but that doesn't change the fact that it would still be a breach of contract and the parties Do you concede that there was a contractual obligation on the part of ADT to replace that defective smoke alarm? I concede that there was a maintenance obligation it's on the face of the contract I think what it says Well wait a minute if there's a maintenance obligation on the face of the contract the question is was there a contractual obligation and your answer is well there was a maintenance agreement and that's on the face of the contract isn't that a way of not saying what you're saying and that is yes there was a contractual agreement that arose from the maintenance obligation in the contract so it's yes Sure if you can find a replacement part and that's the issue I don't think that's pertinent to the analysis Wait a second if you can find a replacement part but if you've got an obligation to maintain an alarm system that includes the second floor don't you have to make it work contractually If that's what the contract says yes and again it would be a breach of contract if I could I see my time's up if I could just address one last point on the failure of consideration I think at bottom that's still a breach of contract but to the extent that would be an affirmative defense to the limitation of liabilities and the remedies provisions that is an argument that we have not seen and that has not been raised to this court or below and would not be a basis to reverse the district court because it would be waived at this point Okay Mr. Tubman thank you Thank you Mr. Spivak The Wedner case is not precedent because that was decided by an equally divided court What are Wedner Wedner Wedner Okay Also Lo Bianco there was no majority opinion in Lo Bianco there was a lead opinion written by Judge Spaeth but there was no majority opinion and in Kruger it's interesting what the court said in Kruger Pennsylvania does not countenance certain claims of unconscionability when based on inconspicuous or unclear language in particular if the parties have unequal buying power All of the cases or I should say most of the cases deal with the situation speaking about consumers and business people if you're a business person you're held to one standard if you're a consumer you're held to another standard Your Honor Judge McKee asked whether this is a type of case which should be certified to the Supreme Court In all fairness I think I'm under an obligation to say that is something that has to be considered because the Supreme Court has granted aliquotter in the case of Tire vs. Camelback Mountain which is cited in the brief and which deals with exculpatory clauses so I think this issue may be one of those issues which the court will consider Also in considering these kinds of cases Judge Vanesky in dealing with a case involving similar type issues involving commercial products in Leprino Foods Company vs. Grass Poultry which is $3.79 FedSup $6.59 It's not cited in my brief Well Cheese Case Yes He keeps it simple In this case tort concepts were applied in a contract situation involving a bailer situation and in most of these cases tort concepts have been applied and the discussion of gross negligence has always taken has frequently taken place in analyzing these cases and I would say that would be appropriate in this case where you have a situation where a monitoring company takes out a monitoring component for three or four years doesn't reduce its charges doesn't send out a letter I think more than a breach of contract arises I think there is a social obligation on the part of the monitoring company to provide a service You're talking to the legislature we can't help you with the social  we may be able to help you with contract or torts depending on the number of factors here but the social obligation you're talking to the wrong audience Well I think the social obligation gives rise to the tort I think once they take the monitoring equipment out of the house and the green spans are led to believe that it's going to be replaced they never received a letter saying it wasn't going to be replaced If I undertake to do something for you and I do it in a poor fashion and in a negligent fashion you would have a cause of action against me based in tort because I was a gratuitous undertaker Right but once I have a contract with you it's the contract that prevails But they're claiming that they have no obligation to repair anything now they just can't do it I thought I heard your adversary say that there was a contractual obligation Well he's saying now he's saying it but previously they took out the monitoring system they didn't reduce the charges their conduct says they don't have any obligation to do anything Well and you could also have said I'm only paying half because you're only giving me half the charge and you didn't provide all the services that would give rise to a claim for repayment to your clients Well if you're a business person that would come to your office    not be able to do any of those things and that's why ADT has an obligation and as I said if you look at the contract that's I know what he's doing so I don't need to be able to explain what he's doing yeah that's fine that's fine okay all right and I'm just wondering whether he he he he he they get more information yeah my question is yes may it please the court I would like to take this opportunity to thank Mary Kramer who did most of the work in my brief and to apologize publicly for her for not having her name on the brief and I will submit a letter with permission to file a motion with the revised cover with the revised cover thank you and it will be granted and I have asked her to sit at